Filed 7/10/14  P. v. Brown CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>CHRISTOPHER TRAVIONTE BROWN,<br><br>　　　　Defendant and Appellant. | B251671<br><br>(Los Angeles County<br>Super. Ct. No. MA058798) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Bernie C. LaForteza, Judge.  Modified and, as modified, affirmed with directions.

James Koester, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr., Connie H. Kan and Jessica Owen, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Christopher Travionte Brown appeals from the judgment entered following his convictions by jury on count 1 – second degree robbery (Pen. Code, § 211), count 2 – kidnapping to rob (Pen. Code, § 209, subd. (b)(1)), count 3 – criminal threats (Pen. Code, § 422), and three counts of assault with a firearm (Pen. Code, § 245, subd. (a)(2); counts 4 – 6) with firearm use as to each of counts 3 through 6 (Pen. Code, § 12022.5, subd. (a)), and count 8 – discharge of a firearm with gross negligence (Pen. Code, § 246.3, subd. (a)). The court sentenced appellant to prison for life with the possibility of parole plus 18 years. We modify the judgment and, as modified, affirm it with directions.

## FACTUAL SUMMARY

Viewed in accordance with the usual rules on appeal (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), the evidence established about 8:00 p.m. or 9:00 p.m. on August 4, 2012, 17-year-old Fredi Ortega was walking his dogs, an Alaskan huskie and a Chihuahua, on Fifth Street East in Lancaster towards his home on Raysack. It was very dark. The huskie was on a leash. Appellant crossed the street, approached Ortega, and claimed one of the dogs had just bitten appellant. Ortega vehemently disagreed but appellant said Ortega would have to pay. Appellant pulled out a gun and said he would shoot Ortega's dog. Appellant pointed the gun at a dog, then at Ortega. Appellant asked if Ortega had money and appellant said he needed $200.

Appellant later asked if Ortega had a cell phone and he replied yes. Appellant demanded the cell phone and Ortega surrendered it. Appellant said he would call the police or paramedics because of the dog bite. Ortega invited him to call. When the cell phone did not work, appellant pulled out his gun, pointed it at Ortega and a dog, and said appellant would shoot both. Appellant retracted the gun's slide and said he wanted "the $200 damn dollars."

Ortega indicated he could go to his house and give appellant $200. Ortega said this because a sheriff's deputy, a neighbor, was normally outside. Appellant told Ortega appellant was not going to Ortega's house because appellant did not know who was there. Ortega indicated only his parents were there and he could give appellant money.

Appellant and Ortega walked towards Ortega's house. The two walked on Fifth Street East, then on East Avenue J4 towards Raysack. When they arrived near Raysack, appellant was about two steps to Ortega's left and was holding the gun near appellant's waist. Sometimes the gun was tucked under appellant's shirt; other times the gun was outside his shirt. Ortega also testified appellant had the gun in his left hand as he was walking down the street with Ortega.

Ortega's house was near the end of Raysack. As Ortega and appellant neared Ortega's house, Ortega told appellant they were approaching Ortega's house and Ortega wanted to put his dogs away so he could get the money. Appellant replied no and indicated someone inside the house might shoot him. Ortega denied this but appellant said Ortega should call someone to get the money. At some point appellant told Ortega not to do anything stupid or appellant would enter the house and shoot everyone inside. Ortega thought about fleeing but could not flee because of his dogs.

Three of Ortega's neighbors were outside and approached him. The three told appellant not to do anything to Ortega. Ortega testified, "They were talking, and all of a sudden [appellant] took off running. I just saw that he aimed towards the back and shot." Ortega also testified when appellant started shooting, "he fired in our direction." Ortega denied appellant pointed the gun at Ortega and his three neighbors and began shooting at the four of them. The prosecutor asked if appellant "just shot it in your general direction" and Ortega replied yes. A neighbor testified appellant at some point "[threw] out a gang name." After appellant started shooting, everyone fled. While Ortega was fleeing, he saw appellant, off to the side, fire two shots. Ortega heard a third shot when he was in his house.[1]

## ISSUES

Appellant claims (1) insufficient evidence supports his conviction on count 2, (2) Penal Code section 654 barred punishment on counts 1 and 4, (3) the trial court abused

---

[1]	There is no need to recite other evidence presented by the People or appellant since there is no need to discuss such evidence in our later analysis.

its discretion by denying appellant's *Faretta*[2] motion, (4) appellant is entitled to additional custody credit, and (5) the abstract of judgment must be corrected.

## DISCUSSION

1. *Sufficient Evidence Supports Appellant's Conviction for Aggravated Kidnapping (Count 2).*

Appellant claims insufficient evidence supports his aggravated kidnapping conviction (count 2). As mentioned, appellant kidnapped Ortega to rob him of the $200 Ortega said was in his house. We reject appellant's claim. "Kidnapping to commit [robbery] involves two prongs. First, the defendant must move the victim and this asportation must not be 'merely incidental to the [robbery].' [Citations.] Second, the movement must increase 'the risk of harm to the victim over and above that necessarily present in the [robbery].' [Citation.] The two are not mutually exclusive, they are interrelated. (*People v. Rayford* (1994) 9 Cal.4th 1, 12 . . . [(*Rayford*)].)" (*People v. Shadden* (2001) 93 Cal.App.4th 164, 168 (*Shadden*).)

"For the first prong, the jury considers the distance the defendant moved the victim and the 'scope and nature' of the movement. [Citations.]" (*Shadden*, *supra,* 93 Cal.App.4th at p. 168.) There is no minimum number of feet a defendant must move the victim in order to satisfy the first prong. (*Ibid.*) In *People v. James* (2007) 148 Cal.App.4th 446, 454-455 (*James*), this division stated, "Standing alone, the fact that the movement of a robbery victim *facilitates* a robbery does not imply that the movement was merely incidental to it. The Supreme Court rejected this contention in *In re Earley* (1975) 14 Cal.3d 122, 130 and footnote 11, concluding that a substantial movement made solely to facilitate a robbery is not incidental to it, but an insubstantial facilitating movement would be." (*Id.* at pp. 454-455.)

*James* also stated, "Similarly, a movement of the victim that is *necessary* to the robbery might or might not be merely incidental, based on the circumstances. (See *People v. Washington* [(2005)] 127 Cal.App.4th [290], 299 [movement of bank employees inside the bank to the vault was necessary in order to obtain the money *and* was merely incidental

---

[2]     *Faretta v. California* (1975) 422 U.S. 806 [45 L.Ed.2d 562] (*Faretta*).

to the robbery]; *People v. Stathos* [(1971)] 17 Cal.App.3d [33,] 39 [*Stathos*] [driving restaurant owner from his home to his restaurant in order to obtain money at the restaurant was necessary in order to obtain the money *and* was not merely incidental to the robbery].)" (*James*, *supra*, 148 Cal.App.4th at pp. 454-455.)[3]

The second prong "includes consideration of such factors as the decreased likelihood of detection, the danger inherent in a victim's foreseeable attempts to escape, the attacker's enhanced opportunity to commit additional crimes, . . . and 'the possible enhancement of danger to the victim resulting from the movement.' " (Cf. *Rayford*, *supra,* 9 Cal.4th at pp. 13-14.) Examples of such risk include unforeseen intervention by third parties. (*Id.* at p. 13.)

Appellant concedes he forcibly moved Ortega from the location on Fifth Street East where appellant initially detained Ortega to the location in front of Ortega's house on Raysack. Appellant also concedes he forcibly moved Ortega "roughly a block and a half" or "approximately one quarter mile" on public streets. We accept the concessions without assuming the total distance could not have been greater.

There was substantial evidence appellant forcibly moved Ortega the above mentioned distance down one street and portions of others about 8:00 p.m. or 9:00 p.m. The jury reasonably could have concluded beyond a reasonable doubt the movement was for a substantial distance and occurred over a considerable period of time. (Cf. *Stathos*, *supra*, 17 Cal.App.3d at p. 39.) The first prong did not require Ortega be moved a minimum number of feet. The mere facts the movement may have occurred solely to facilitate the taking of the $200 Ortega indicated was inside his house, or the movement may have been necessary to accomplish said taking, did not make the movement merely incidental to the intended robbery of the $200. (Cf. *James*, *supra*, 148 Cal.App.4th at pp. 454-456; *Stathos*,

---

[3]     In *Stathos*, the defendants drove the victim an undisclosed distance to the restaurant and, after the robbery, drove him an undisclosed distance before releasing him. (*Stathos*, *supra*, 17 Cal.App.3d at p. 36.) *Stathos* stated, "In the case at bench [the victim] was transported across Marin County for a substantial distance and was held for a considerable period of time. The asportation was not merely incidental. It was an important, even necessary, part of the criminal project, for without it there could be no robbery, at least in the manner planned by defendants." (*Id.* at p. 39.)

*supra*, 17 Cal.App.3d at p. 39.) We conclude there was sufficient evidence of the first prong.

As to the second prong, there was substantial evidence as follows. The movement occurred when it was very dark. This decreased the likelihood of detection, increased the danger inherent in Ortega's foreseeable attempts to escape, and enhanced appellant's opportunity to commit additional crimes, e.g., murdering Ortega and/or killing his dogs.

Moreover, a " 'kidnap victim's peril ordinarily grows with the passage of time and distance.' [Citation.]" (*James*, *supra*, 148 Cal.App.4th at p. 458.) The longer Ortega was in appellant's presence, the greater the risk was of lethal harm to Ortega arising from conflict between, on the one hand, the armed appellant and, on the other, Ortega and/or his dogs. Appellant had threatened to shoot Ortega and a dog. The risk third parties would intervene increased as appellant and Ortega approached what was, to Ortega, the familiar environs of his house (and intervention in fact occurred). Ortega had recommended that Ortega and appellant go to Ortega's house because Ortega knew a sheriff's deputy was normally outside.

Although appellant had indicated he did not want to enter Ortega's house, the risk appellant would change his mind and accompany Ortega inside (further decreasing the likelihood of detection) increased as the two approached the house. In this regard, we note appellant initially refused to go to Ortega's house but changed his mind when Ortega told appellant that only Ortega's parents were in the house. At some point appellant indicated if Ortega did anything stupid appellant would enter the house and shoot everyone inside. These facts demonstrated appellant's unpredictability and the possibility he ultimately might have decided to enter the house. We hold there is sufficient evidence to convince a rational trier of fact, beyond a reasonable doubt, appellant committed kidnapping to rob Ortega of the $200 he indicated was at his home. None of appellant's arguments compel a contrary conclusion.

2.  *Penal Code Section 654 Did Not Bar Punishment on Counts 1 and 4.*

Appellant claims, as between second degree robbery (count 1), kidnapping to rob (count 2), and assault with a firearm (count 4) (Ortega being the victim as to each of those counts), Penal Code section 654 barred punishment on counts 1 and 4.[4] For the reasons discussed below, we reject appellant's claim.[5]

There was substantial evidence as follows. As to counts 1 and 2, the only robbery (count 1) in this case was appellant's robbery of Ortega's cell phone. For purposes of establishing guilt, appellant completed that robbery when, under the circumstances presented by the People's evidence, appellant took the cell phone from Ortega. (Cf. *People v. Cooper* (1991) 53 Cal.3d 1158, 1165; *People v. Clark* (1945) 70 Cal.App.2d 132, 133; *People v. Pham* (1993) 15 Cal.App.4th 61, 65-68.) Appellant subsequently kidnapped Ortega as the two walked towards Ortega's house; therefore, any kidnapping to rob occurred after appellant robbed Ortega of his cell phone. Appellant kidnapped Ortega to rob him of $200 Ortega indicated was in his house.

There was substantial evidence that, after appellant completed robbing Ortega of his cell phone, *after Ortega suggested the two go to his house*, but before the kidnapping

---

[4]   Appellant suggests in his opening brief the trial court did not impose a sentence on count 1. The record reflects otherwise. When sentencing appellant, the court stated "count 1 will be one-third the midterm for an additional one year consecutive . . . ."

[5]   Penal Code section 654, as interpreted by our Supreme Court, prohibits multiple punishment for offenses committed during an indivisible transaction. Whether a course of conduct is indivisible depends on the intent and objective of the actor. If all offenses are incident to one objective, the defendant may not be punished for more than one. However, if the defendant entertained multiple criminal objectives which were independent of and not merely incidental to each other, the defendant may be punished for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct. Whether Penal Code section 654 applies in a given case is a question of fact for the trial court, which is vested with broad latitude in making its determination. Its findings will not be reversed on appeal if there is any substantial evidence to support them. This includes the trial court's implied findings. (*People v. Perez* (1979) 23 Cal.3d 545, 551; *People v. Jones* (2002) 103 Cal.App.4th 1139, 1143; *People v. Nguyen* (1988) 204 Cal.App.3d 181, 190 (*Nguyen*); cf. *People v. Bradley* (2003) 111 Cal.App.4th 765, 769, fn. 3.)

occurred, appellant formulated a new criminal intent and objective, i.e., to rob Ortega of personal property not in Ortega's physical possession at the time, i.e., the $200 at Ortega's house. Appellant kidnapped Ortega to rob him with that *new* criminal intent and objective. We conclude Penal Code section 654 did not bar multiple punishment on counts 1 and 2.[6] (Cf. *People v. Smith* (1992) 18 Cal.App.4th 1192, 1197-1199; *People v. Porter* (1987) 194 Cal.App.3d 34, 36-39; see *People v. Marquez* (2000) 78 Cal.App.4th 1302, 1308.)

As between, on the one hand, counts 1 and 2, and, on the other, assault with a firearm on Ortega (count 4), appellant argues "the assault with the firearm was merely the method to effectuate the force or fear elements of the kidnapping and robbery that shared the singular criminal intent to take Ortega's property." We reject that argument. As mentioned, the robbery ended when appellant took the cell phone. The kidnapping to rob later ended when appellant fled. This is true because forcible detention is an implied element of kidnapping; therefore, as long as appellant's detention of Ortega continued, so did the kidnapping (*People v. Thomas* (1994) 26 Cal.App.4th 1328, 1334-1335), and the detention ended when appellant fled. It was only after those events appellant aimed back and shot in the direction of Ortega (and his neighbors).

---

[6]     *People v. Lewis* (2008) 43 Cal.4th 415 (*Lewis*), on which appellant heavily relies, does not help him. Unlike the present case, *Lewis* involved culprits committing kidnapping to rob a man, *then* committing *that very robbery*, and committing kidnapping to rob a woman, then committing that very robbery. In the present case, the robbery of Ortega *preceded* the kidnapping to rob him. Moreover, *Lewis* simply involved the kidnappings to rob, and the subsequent robberies, of the man and woman in that case. In the present case, there was substantial evidence appellant robbed Ortega of personal property (the cell phone) with the criminal intent and objective of robbing Ortega of property in his physical possession, and *later* kidnapped Ortega to rob him, committing said kidnapping with the *new* criminal intent and objective of robbing him of personal property (the $200) he would later physically possess at his house. Finally, appellant's robbery of Ortega's cell phone *before* kidnapping him to rob him of the $200 is analogous to the culprits in *Lewis* robbing the woman of her ring *before* kidnapping her to rob her of her car. We note *Lewis* concluded the culprits, when kidnapping to rob the woman, and robbing her, had a single intent and objective of robbing her of her car, but *Lewis* did not conclude the culprits had the single intent and objective of robbing her of her *ring* and the car. Nothing in *Lewis* precludes a conclusion appellant did not have a single criminal intent and objective at the time of the robbery and kidnapping to rob in this case.

Appellant's act of aiming back and shooting in the direction of Ortega (count 4) was gratuitous violence and a criminal act far beyond what was reasonably necessary to accomplish the previous robbery and kidnapping to rob. Penal Code section 654 did not bar punishment on count 4. (Cf. *Nguyen*, *supra*, 204 Cal.App.3d at pp. 190-191; *People v. Williamson* (1979) 90 Cal.App.3d 164, 172; *People v. Johnson* (1969) 270 Cal.App.2d 204, 208-209.)

3. *The Trial Court Properly Denied Appellant's Motion to Represent Himself.*

   a. *Pertinent Facts.*

On March 19, 2013, the People filed the information in this case, the court appointed counsel for appellant, and appellant was arraigned. After a continuance, the court, on April 4, 2013, called the matter for jury trial and appellant indicated he was retaining counsel. On April 8, 2013, retained counsel appeared for appellant but, after several continuances, the court, on June 24, 2013, relieved said counsel due to a conflict of interest. At the July 1, 2013 pretrial conference, the court appointed counsel for appellant. Appellant indicated he was trying to retain counsel. After multiple continuances, a jury was sworn on August 1, 2013. On August 6, 2013, appellant refused to exit his jail cell and voluntarily absented himself from trial. On August 7, 2013, and during all subsequent proceedings, appellant was present in court.

On August 8, 2013, the People rested and the court later granted appellant's request for a five-minute recess. After the recess, appellant's counsel stated appellant wanted to represent himself. Appellant's counsel represented appellant was competent to represent himself, was "bright," and had a right to represent himself. The court later stated, "He certainly has that right, and he may or may not be competent enough, but his request is untimely. So the motion is denied."

Shortly after appellant's counsel began his sentencing argument, the following occurred: "The Defendant: Excuse me, sir. Can you just sentence me? [¶] The Court: I'm going to. [¶] The Defendant: Right now. [¶] The Court: Let me hear [defense counsel's] argument, sir. [¶] The Defendant: Fuck all that. [¶] The Court: Watch your language, sir. I can hear that."

b. *Analysis*.

Appellant claims the trial court abused its discretion by denying appellant's *Faretta* motion. We disagree. Appellant made his request to represent himself, not merely on the eve of, but during, trial. Accordingly, any request for self-representation was untimely and simply addressed to the wide discretion of the court. (Cf. *People v. Clark* (1992) 3 Cal.4th 41, 99-100 (*Clark*); *People v. Windham* (1977) 19 Cal.3d 121, 128, fn. 5.)

There is no question about the quality of the representation of appellant's trial counsel. Appellant did not articulate below any reasonable basis for dissatisfaction with his trial counsel's performance, and appellant does not claim here he received ineffective assistance. Appellant had demonstrated a proclivity to attempt to substitute counsel. Despite multiple continuances throughout the proceedings below, appellant waited until after the People rested to move to represent himself. Appellant already had demonstrated a willingness to delay proceedings by his August 6, 2013 refusal to appear in court.

Appellant's counsel indicated appellant wanted to represent himself during trial and any sentencing hearing. In evaluating whether appellant's purpose for moving to represent himself was delay and disruption of the proceedings, we may consider events that occurred after the motion. (*People v. Marshall* (1997) 15 Cal.4th 1, 19, 26.) Appellant's unapologetic, profanity-laced insistence upon immediate sentencing supports the inference delay and disruption were some of appellant's objectives in making his motion. (*Id*. at p. 26.)

The trial court did not have to explicitly state these factors where, as here, the record reflects there were sufficient reasons for the court to deny appellant's request. (Cf. *People v. Scott* (2001) 91 Cal.App.4th 1197, 1206; *People v. Perez* (1992) 4 Cal.App.4th 893, 904 (*Perez*).) We conclude the trial court did not abuse its discretion by denying appellant's motion to represent himself. (Cf. *Clark, supra,* 3 Cal.4th at pp. 98-101; *Perez,* at pp. 904-905.)

4. *Appellant Is Entitled to Additional Precommitment Credit.*

Appellant was arrested on August 4, 2012, and remained in custody until the September 16, 2013 sentencing hearing, a total of 409 days, inclusive. However, the trial court awarded appellant 408 days of custody credit plus 61 days of conduct credit. (There is no dispute the award of 61 days of conduct credit is correct. (Pen. Code, § 2933.1, subds. (a) & (c).)) Respondent concedes appellant is entitled to an additional day of custody credit. We accept the concession (*People v. Bravo* (1990) 219 Cal.App.3d 729, 735) and will modify the judgment accordingly.

5. *The Judgment Must Be Modified and the Abstract of Judgment Amended Concerning Criminal Conviction Assessments.*

During the sentencing hearing, the trial court imposed one $30 Government Code section 70373, subdivision (a)(1) criminal conviction assessment. However, the trial court was required to impose a total of seven such assessments, one for each of appellant's convictions (*People v. Castillo* (2010) 182 Cal.App.4th 1410, 1414-1415, fn. 3; Gov. Code, § 70373, subd. (a)(1)), for a total of $210 in such assessments. Moreover, the abstract of judgment reflects a total of $240 in such assessments.

Appellant acknowledges the trial court erroneously failed to impose a total of $210 in criminal conviction assessments, but appellant asks only that the abstract of judgment be corrected to reflect $210 in such assessments instead of $240. There is no dispute the trial court's above mentioned failure was erroneous, and both parties concede the abstract of judgment must be amended to reflect $210 in such assessments. The abstract of judgment merely digests or summarizes the judgment. (*People v. Prater* (1977) 71 Cal.App.3d 695, 703.) The judgment must be modified to impose a total of seven criminal conviction assessments. We will modify the judgment and direct the trial court to amend the abstract of judgment accordingly.

### *DISPOSITION*

The judgment is modified by (1) imposing six additional $30 Government Code section 70373, subdivision (a)(1) criminal conviction assessments, for a total of $210 in such assessments, and (2) awarding appellant one additional day of Penal Code section 2900.5, subdivision (a) custody credit and, as modified, the judgment is affirmed. The trial court is directed to forward to the Department of Corrections an amended abstract of judgment reflecting the above modifications.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KITCHING, J.

We concur:

KLEIN, P. J.

ALDRICH, J.