Filed 6/11/21  P. v. Lane CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>       Plaintiff and Respondent,<br><br>v.<br><br>RODNEY ALEXANDER LANE, JR.,<br><br>       Defendant and Appellant. | C086981<br><br>(Super. Ct. No. STKCRFER20170011774) |

A homeowner confronted defendant Rodney Alexander Lane, Jr., when he broke into his home and tried to steal a set of car keys by the front door; defendant fled to another neighbor's house while the homeowner followed.  Defendant stole a set of car keys from the second neighbor's house and fled in her car.  Police apprehended him the following day with the stolen vehicle; he disregarded an officer's commands to stop before being arrested.

1

A jury found defendant guilty of two counts of residential burglary with a person present, driving or taking a vehicle without consent, and resisting, delaying or obstructing an officer. He was sentenced to an aggregate term of eight years in state prison.

Defendant contends on appeal that the trial court: (1) abused its discretion in ordering him restrained during trial; (2) erred by failing to stay the sentence on the stolen vehicle conviction under Penal Code[1] section 654; and (3) violated his due process rights by imposing an unauthorized sentence and failing to state the statutory bases for all of the fines imposed.

We conclude that defendant forfeited his restraint challenge, and, in any event, that no evidence shows he was prejudiced by a leg brace that was not visible to the jury. We agree that the sentence for the vehicle theft should have been stayed under section 654, and that the court erred in delineating the basis for the fees and fines imposed. We shall remand for resentencing accordingly.

FACTUAL AND PROCEDURAL BACKGROUND

On the afternoon of August 27, 2017, Scott H. heard the front door of his home open; he saw an arm reach in and grab a set of keys on a nearby key holder. Scott grabbed the person's arm and opened the front door, coming face-to-face with defendant. After retrieving the keys, Scott told defendant he intended to call police. Defendant said that was unnecessary as he backed away from the door.

Scott retrieved his phone from inside his house and followed defendant as he walked towards Rachel L.'s home a few houses down the street. Scott briefly lost sight of defendant as he walked towards Rachel's front door. A few seconds later, Scott saw defendant reappear; defendant got into Rachel's silver Volkswagen Jetta in her driveway and drove away.

---

[1] Undesignated statutory references are to the Penal Code.

2

Rachel's front door had been unlocked and her car keys were on a table near the front door; the keys were visible through a large window from the street. She heard her front door softly open and close, and the house security system noted the front door had been opened. As she got up to check the door, Scott rang her doorbell and asked about her car. She glanced at the driveway and noticed her Jetta was gone; her keys were also missing from the table where she had left them. A short time later, Rachel reported her car stolen.

Shortly after midnight on August 28, 2017, Stockton Police Officer Stephanie Hawkins responded to a trespassing report at a vacant house in Stockton. Officer Hawkins was in uniform and driving a distinctly marked police vehicle. When she arrived, a silver Volkswagen Jetta was parked in the driveway and a man was sitting in the driver's seat. After determining the car had been reported stolen, Officer Hawkins shined a spotlight on the car; the driver, later identified as defendant, got out of the car and walked toward the house. She yelled at defendant to stop, but he continued into the house.

Additional officers arrived on scene and instructed defendant to come out of the house. Defendant was arrested and the key to the Volkswagen Jetta was found at the back of the house.

Scott later identified defendant from a photographic lineup. During trial, Scott also identified defendant as the man who tried to steal his keys and who stole Rachel's car.

Defendant testified on his own behalf, claiming he lived at the house where he was arrested. On the morning of August 27, he had gone to Sacramento to pick up his furniture to move into his house and was gone most of the day. He denied ever seeing Scott before. He admitted he had several prior convictions.

3

The jury found defendant guilty of two counts of residential burglary (§ 459—counts 1 & 2), driving or taking a vehicle without consent (Veh. Code, § 10851, subd. (a)—count 3), and resisting or obstructing a peace officer (§ 148, subd. (a)(1)—count 5).[2] It also found true the allegations that people were present during the burglaries.

The trial court sentenced defendant to an aggregate term of eight years in prison; six years for the count 2 burglary, a consecutive 16 months (one-third the midterm) for the count 1 burglary, a consecutive eight months (one-third the midterm) for the count 3 taking a vehicle offense, and a concurrent 364 days for the count 5 resisting a peace officer offense. The court denied defendant's request to stay the sentence on count 3 under section 654.

The trial court imposed a $300 restitution fine (§ 1202.4), a $120 court facilities assessment (Gov. Code, § 70373), and a $160 court operations assessment (§ 1465.8). For counts 1 and 2, the court imposed $39 each in "theft-related fees," and for count 3, a $4 air and medical transportation fee. Defendant timely appealed.

DISCUSSION

I

*Physical Restraints During Trial*

Defendant contends the trial court abused its discretion and violated his constitutional rights to due process and a fair trial, and to be free from unreasonable seizure, in ordering him restrained throughout the trial. To the extent the claim is forfeited for counsel's failure to object when the trial court ordered defendant to wear a leg brace before picking the second jury, he argues ineffective assistance of counsel.

---

[2] Defendant was charged in count 4 with receiving stolen property, Rachel's car, but the jury did not return a verdict on that count, and the court granted the prosecutor's motion to dismiss it.

4

A. *Additional Background*

Defendant initially chose to represent himself during the trial proceedings. He conducted the preliminary hearing on his own behalf.

After holding defendant to answer, the court subsequently considered whether to restrain defendant during trial. In doing so, the court reviewed defendant's criminal history, noting that he had numerous felony and misdemeanor convictions since 2005, including a felony conviction in 2013 for obstructing or resisting an executive officer (§ 69), and two misdemeanor convictions for obstructing, resisting or delaying a peace officer in 2005 and 2008 (§ 148). The court also noted several rule violations while defendant had been jailed, including being uncooperative during prebooking, being argumentative with staff, and disobeying housing guidelines.

Based on defendant's prior record as well as his uncooperative conduct at the jail, the court found a manifest need to restrain defendant during trial even though he had not previously disrupted any trial proceedings. The court determined that the highest level of restraint—arm and leg shackles—was not appropriate. But the court also found that the least restrictive restraint—a leg brace—was inappropriate given his record and rule violations. The court thus ordered defendant's leg to be tethered to counsel's table out of the jury's sight. The tether would prevent defendant from standing during voir dire or while questioning witnesses during trial.

Following the court's ruling, defendant requested that the court afford him the same privileges as the district attorney to stand and address the jury during voir dire. The court denied the request, citing its ability to control the courtroom and defendant's prior record and jail violations.

At the start of jury selection, defendant introduced himself and told the jury that he was not allowed to stand per the judge's instructions. Before jury selection concluded, the judge declared a doubt as to defendant's competency, suspended criminal proceedings, and dismissed the prospective jurors.

5

After defendant was evaluated and deemed competent, criminal proceedings were reinstated. Before selecting a second jury, defendant requested appointed counsel. The court appointed attorney Heath Wilding to represent him.

The court later reconsidered whether to restrain defendant during trial. Given defendant's criminal background with felony and misdemeanor violations involving violence or potential violence and his rule violations while in jail, the court again determined there was a manifest need to restrain him during trial. This time, however, the court found that a leg brace was sufficient and that his leg need not be tethered to the table. Defense counsel did not object to the leg brace but inquired about whether defendant's hands would be free, which the court permitted.

Nothing in the record indicates the jury was aware of the leg brace, or that the leg brace was visible during trial. Defendant took the stand outside the jury's presence so jurors would not see the leg brace before he testified.

B. *Use of Restraints*

"A trial court ' "has broad power to maintain courtroom security and orderly proceedings." ' " (*People v. Jackson* (2014) 58 Cal.4th 724, 738 (*Jackson*).) In *People v. Duran* (1976) 16 Cal.3d 282, 290-291, a case involving visible shackling, our Supreme Court held that "a defendant cannot be subject to physical restraints of any kind in the courtroom while in the jury's presence, unless there is a showing of a *manifest need* for such restraints." Federal law is similar. (*Deck v. Missouri* (2005) 544 U.S. 622, 624 [161 L.Ed.2d 953, 959 [federal Constitution "forbids the use of visible shackles . . . *unless* that use is 'justified by an essential state interest' . . . specific to the defendant on trial"].)

In gauging potential security problems or the risk of escape at trial, courts rely on several factors, including evidence showing that a defendant poses a safety risk, a flight risk, or is likely to disrupt the proceedings or otherwise engage in nonconforming behavior. (*Jackson,* at p. 738.) Although a record of violence or current violent charges cannot alone justify a defendant's shackling (*Duran,* at p. 293), the manifest need

6

requirement is "satisfied by evidence that the defendant has threatened jail deputies, possessed weapons in custody, threatened or assaulted other inmates, and/or engaged in violent outbursts in court. [Citations.]" (*People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 1031; see also *People v. Hawkins* (1995) 10 Cal.4th 920, 944, abrogated on another ground in *People v. Blakeley* (2000) 23 Cal.4th 82, 89-90 [sufficient evidence of a manifest need for shackling order where the defendant had a history of (1) criminal violence and (2) violent and nonconforming behavior in jail].) We will uphold a trial court's decision to shackle a defendant, absent an abuse of discretion. (*Lewis and Oliver*, at p. 1032.)

In this case, defendant failed to object to the leg brace and has therefore forfeited his abuse of discretion and constitutional claims on appeal. (*People v. Williams* (2015) 61 Cal.4th 1244, 1259 (*Williams*) [the defendant's claim that trial court abused its discretion and violated his rights under the Fifth, Sixth, and Eighth amendments to the U.S. Constitution and various provisions of the California constitution by ordering physical restraints was forfeited by failure to object at trial].) Defendant's earlier request, when representing himself, to be afforded the same privilege as the prosecutor to question potential jurors while standing was not sufficient to preserve an objection in the subsequent trial when represented by counsel.

In any event, we need not consider any abuse of discretion because no evidence suggests that any juror saw the leg brace. (*Williams, supra*, 61 Cal.4th at p. 1259; *People v. Foster* (2010) 50 Cal.4th 1301, 1321 [no need to consider whether trial court abused its discretion in ordering leg restraints because no evidence showed jurors observed the use of these restraints].) When questioned by defendant, the court assured him that the jury would not be able to see the leg brace. Defendant also took the stand to testify before the jury was present so that jurors would not be able to see him walk with the leg brace.

We reject defendant's implicit argument that using physical restraints a jury never sees is akin to a structural error that is presumed prejudicial. The Supreme Court has

7

previously rejected a similar argument.  (*Williams, supra*, 61 Cal.4th at p. 1259.)  It is only where the restraints were visible to the jury that " 'courts consistently have viewed [the restraints] as inherently prejudicial.' "  (*Ibid.*; *People v. Letner and Tobin* (2010) 50 Cal.4th 99, 155 ["we do not presume the prospective jurors viewed the restraint, and there is no evidence in the record demonstrating they did observe it"].)  Like the Supreme Court in *Williams*, we decline to presume the jurors viewed the restraint as nothing in the record shows they did so.  (*Williams,* at p. 1260.)

Nor are we persuaded by defendant's claim that he suffered prejudicial psychological harm from the leg brace.  He contends the leg restraint affected his mental process, embarrassed and humiliated him, and compromised his ability to concentrate on his defense.  While restraints can impair a defendant's ability to testify effectively or have the potential to impair an accused's ability to communicate with counsel or participate in the defense (*Jackson, supra*, 58 Cal.4th at p. 743), the record does not support a finding that such circumstances existed here.

Before testifying, defendant asked the court whether the jury would be able to see the leg brace.  The court reassured defendant that the leg brace would not be visible, noting that he would take and leave the stand outside the jury's presence.  That is exactly what occurred.  Defendant, moreover, participated in his defense and testified on his own behalf, claiming he had an alibi for the day in question.  He had no difficulty recalling his alleged movements the day of the incident; it was only when questioned about his numerous prior convictions for impeachment purposes that defendant supposedly had trouble remembering the convictions.  Thus, nothing in the record shows the restraint distracted defendant or otherwise affected his demeanor before the jury. (*Jackson, supra*, 58 Cal.4th at p. 743.)

Defendant has not, and cannot, show that he was prejudiced by the leg brace, which was not visible to the jury during the trial. We therefore reject his claim.

C. *Ineffective Assistance of Counsel*

Defendant finally argues that if we find his claim forfeited, we must consider it nevertheless because his trial counsel's failure to object constituted ineffective assistance of counsel.

We reject this contention because the record is silent regarding the reason for trial counsel's actions or omissions, and we cannot say that all the relevant facts have been developed. (*People v. Ledesma* (2006) 39 Cal.4th 641, 746 ["an appellate claim of ineffective assistance of counsel must be rejected 'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation' "]; *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 267 ["[a]n appellate court should not . . . brand a defense attorney incompetent unless it can be truly confident all the relevant facts have been developed"].)

In any event, as explained above, defendant suffered no prejudice from wearing a leg brace the jury did not see and which did not affect his demeanor or ability to testify in this own defense. (*Strickland v. Washington* (1984) 466 U.S. 668, 697 [80 L.Ed.2d 674] [if "it is easier to dispose of an ineffectiveness claim on the ground of lack of prejudice . . . that course should be followed"].)

## II

### *Penal Code Section 654*

Defendant contends, and the People concede, that it was improper to punish him for both the first degree burglary of Rachel's home (count 2) and the theft of her car (count 3). We agree the trial court erred under section 654 by imposing punishment for both offenses, and we shall vacate the sentence on count 3 and remand for resentencing.

Section 654 provides in part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides

for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).) The statute does not prohibit multiple convictions for the same conduct, only multiple punishments. (*People v. Monarrez* (1998) 66 Cal.App.4th 710, 713.) "In such a case, the proper procedure is to stay execution of sentence on one of the offenses. [Citation.]" (*Ibid.*)

Section 654's proscription against double punishment applies not only to a discrete physical act but also to a course of conduct encompassing several acts pursued with a single objective. (*People v. Corpening* (2016) 2 Cal.5th 307, 311; *People v. Bauer* (1969) 1 Cal.3d 368, 376 (*Bauer*).) Where a defendant is convicted of multiple offenses, if each criminal act is incidental to, or accomplished with a single objective, the defendant may be found to harbor a single intent. If the defendant harbored multiple criminal objectives independent of one another, he may be punished for each statutory violation even if they were part of an indivisible course of conduct. (*People v. Harrison* (1989) 48 Cal.3d 321, 335.)

The Supreme Court in *Bauer* held that section 654 precluded punishing a defendant for both the armed robbery of a home and the theft of the homeowner's vehicle to escape with the loot. (*Bauer, supra*, 1 Cal.3d at pp. 372, 376-377.) It did not matter that the robbery was "technically complete" before the vehicle theft occurred because section 654 does not permit multiple punishment where there is a course of conduct comprising an indivisible transaction with a single objective. (*Bauer,* at p. 377.) Nor did it matter that the vehicle theft may have been an afterthought to the robbery. (*Ibid.*)

Following *Bauer*, other courts have reached the same result. (See, e.g., *People v. Alford* (2010) 180 Cal.App.4th 1463, 1468 [punishment for both burglary and theft prohibited where burglary was based on entering with the intent to commit that theft]; *People v. Bernal* (1994) 22 Cal.App.4th 1455, 1458 [trial court did not err in entering judgment of conviction for both burglary and petty theft occurring during the burglary and then staying punishment for petty theft under section 654]; *People v. Smith* (1992)

10

18 Cal.App.4th 1192, 1194-1195, 1199 [§ 654 barred punishment for vehicle theft where the defendant drove the victim to an ATM to use victim's access card to obtain money and then drove away in victim's car after releasing the victim].)

Here, defendant burglarized Rachel's home to get her car key that was visible through the window in order to steal her car. There is no evidence showing defendant harbored more than one intent during both offenses. The trial court therefore erred in punishing defendant for burglary and car theft; the sentence for unlawfully taking Rachel's car should have been stayed under section 654.

Because the trial court imposed a consecutive eight-month term (one-third the midterm) for the count 3 car theft, and a stayed term under section 654 is not subject to the one-third the midterm limitation for consecutive sentences (see *People v. Cantrell* (2009) 175 Cal.App.4th 1161, 1164), we shall remand for resentencing. The trial court must determine whether to impose a lower, middle, or upper full term on count 3, and then stay the sentence under section 654.

### III

### *Fines and Fees*

Defendant challenges two errors related to the imposed fees and fines. He argues the trial court failed to state the statutory bases for any penalty assessments imposed as part of $39 in theft-related fees, and that the abstract of judgment reflects a $30 surcharge that the court did not impose at sentencing and for which no statutory basis exists.

As noted above, the court imposed a $300 restitution fine (§ 1202.4), a $120 court facilities assessment ($30 for each conviction) (Gov. Code, § 70373), and a $160 court operations assessment ($40 for each conviction) (§ 1465.8). For count 1 and count 2, the burglary convictions, the court imposed $39 each in "theft-related fees," but did not otherwise identify what was encompassed in the lump sum. The abstract of judgment lists the statutory basis for the $39 in theft fees as section 1202.5. Although not orally

11

imposed at sentencing, the abstract of judgment also includes a "$30 surcharge" with no identified statutory basis.

While "a detailed recitation of all the fees, fines, and penalties on the record may be tedious, California law does not authorize shortcuts." (*People v. High* (2004) 119 Cal.App.4th 1192, 1200.) The abstract of judgment, moreover, must include all fines and fees imposed. (*Ibid.*) Where there is a discrepancy between the oral pronouncement of judgment and the minute order or the abstract of judgment, the oral pronouncement controls. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185-186; *People v. Zackery* (2007) 147 Cal.App.4th 380, 385.)

Here, the court erred by imposing a lump sum "$39 in theft-related fees" without delineating the amount of the fee and any attached penalty assessments. (*People v. High, supra,* 119 Cal.App.4th at p. 1200.) Upon remand for resentencing, we shall direct the court to correct the error.

Because the trial court did not orally impose a "$30 surcharge" as reflected in the abstract of judgment, we shall direct the clerk to delete the surcharge amount from the abstract. To the extent the $30 surcharge reflects a 10 percent administrative collection fee on the $300 restitution fine, which section 1202.4, subdivision (l) may authorize, upon remand the court may impose the collection fee, if applicable, and delineate the basis for the fee on the amended abstract of judgment.

DISPOSITION

The judgment is modified to strike one-third the midterm sentence on count 3. The cause is remanded with directions to the trial court to determine whether to impose a full lower, middle, or upper term on count 3, and then to stay the imposed term under section 654. Upon remand the court shall orally impose any fees, fines, and assessments and set forth the statutory bases for each. The judgment is affirmed as modified. The trial court is directed to prepare an amended abstract of judgment reflecting the

12

modifications and corrections ordered by this court and to forward a certified copy of the abstract of judgment to the Department of Corrections and Rehabilitation.

_____/s/_____
BLEASE, J.

We concur:

_____/s/_____
RAYE, P. J.

_____/s/_____
RENNER, J.

13