[No. B021673. Second Dist., Div. Five. Aug. 14, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
DOCK PORTER, Defendant and Appellant.

COUNSEL

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, and Larry R. Pizarro, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Robert F. Katz and Susanne C. Wylie, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

ASHBY, J.—By nonjury trial appellant was found guilty of robbery (Pen. Code, § 211), kidnapping for the purpose of robbery (Pen. Code, § 209), and receiving stolen property (Pen. Code, § 496). He was sentenced to state prison for life pursuant to Penal Code section 209 and to concurrent upper terms for robbery and receiving stolen property.

### COUNTS I AND II
#### (Kidnapping for the purpose of robbery, robbery)

At about 8:45 p.m. on August 19, 1984, the victim, Mr. Eugene DePiano, was parked in the area of Sunset Boulevard and Western Avenue in Los Angeles. He had returned some rented video cassette tapes to a store and was reentering his car when he observed appellant and another man approaching very rapidly. Mr. DePiano jumped in his car, locked his front door and rolled up the window, but appellant opened the back door, jumped in the back seat, and held a knife to Mr. DePiano's throat. Appellant reached over and unlocked the front passenger door, and appellant's companion got in the front seat. Appellant's companion began going through the victim's wallet which was on the front seat. Appellant directed Mr. DePiano to drive to a dark side street, about 200 yards away, and to stop.

After rummaging through Mr. DePiano's wallet and finding only $7 or $8, appellant and his companion insisted the victim must have more money than that. Examining the victim's credit cards, appellant and his companion found one which they believed was a bank automated teller card. Appellant asked Mr. DePiano where his bank was located, and was told Sunset and Vermont. Appellant told Mr. DePiano "We were going to drive—to drive over there so he could make me use my card to get him some money and I better hope that I had some money in the bank."

With appellant holding the knife to his neck the entire time, Mr. DePiano drove to Sunset and Vermont where he made a U-turn and parked directly in front of the bank ready teller. They had to wait, because several people were in line using the automatic teller. Although Mr. DePiano tried to explain that the card was an ordinary credit card, not an automated teller card, appellant told him "they were going to make me remember how to use this card."

When appellant momentarily put the knife down to examine the card, Mr. DePiano jumped out of the car and ran into a store where he called the police. When he came back out of the store, his car was gone. He recovered the car a couple of weeks later in an impound yard.

When appellant was arrested on October 29, 1984, in connection with a different incident, he had one of Mr. DePiano's credit cards in his wallet. Mr. DePiano had no difficulty picking appellant's photo out of a group of mug shots and identifying him at trial.

COUNT V
(Receiving stolen property)

On October 26, 1984, someone stole Susan Roberts's purse from her home in Hollywood. When appellant was arrested on October 29, he had one of Ms. Roberts's credit cards in his wallet.

CONTENTIONS

Appellant raises two issues on appeal: (1) that the concurrent sentence for robbery violated Penal Code section 654 and (2) that the court inadequately stated its reasons for imposing upper terms on the sentences for robbery and receiving stolen property.

PENAL CODE SECTION 654

On count I, kidnapping for the purpose of robbery, appellant received a term of life imprisonment pursuant to Penal Code section 209. **(1a)** He contends the trial court violated Penal Code section 654 by sentencing him to a concurrent term for robbery on count II.[1]

Numerous cases support the proposition that Penal Code section 654 bars multiple punishment for convictions of kidnapping for the purpose of rob-

---

[1] Although the robbery sentence was concurrent, we must address this contention because if appellant were correct, the execution of sentence for count II must be stayed. (*In re Wright* (1967) 65 Cal.2d 650 [56 Cal.Rptr. 110, 422 P.2d 998].)

bery and for committing that very robbery. (*People* v. *Beamon* (1973) 8 Cal.3d 625, 639 [105 Cal.Rptr. 681, 504 P.2d 905]; *People* v. *Milan* (1973) 9 Cal.3d 185, 197 [107 Cal.Rptr. 68, 507 P.2d 956].) ■ However, the application of section 654 to any particular case depends upon the circumstances of that case. "The initial inquiry in any section 654 application is to ascertain the defendant's objective and intent. If he entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct." (*People* v. *Beamon, supra,* 8 Cal.3d at p. 639.) Whether the defendant maintained multiple criminal objectives is determined from all the circumstances and is primarily a question of fact for the trial court, whose finding will be upheld on appeal if there is any substantial evidence to support it. (*People* v. *Goodall* (1982) 131 Cal.App.3d 129, 148 [182 Cal.Rptr. 243].) ■ The record in this case supports the trial court's implied finding that the two crimes for which appellant was sentenced involved multiple objectives, were not merely incidental to each other, and were not part of an indivisible course of conduct.

A reasonable inference from the record is that appellant and his companion initially planned only to rob the victim of the contents of his wallet, but thereafter came up with a new idea: kidnapping the victim to his bank to compel him to withdraw money from his account by means of what they thought was an automated teller card. (See *People* v. *Helton* (1979) 91 Cal.App.3d 987, 992 [154 Cal.Rptr. 482] [defendant kidnapped the victim for rape, then as an afterthought, independent of and not merely incidental to the sex acts, took the victim's money and truck]; *People* v. *Ferguson* (1969) 1 Cal.App.3d 68, 75 [81 Cal.Rptr. 418] [defendant kidnapped a husband and wife initially for the purpose of compelling them to perform sex acts while he watched, but after he became dissatisfied with their performance he abandoned the initial purpose and committed sexual offenses against the wife himself].) In this case the record suggests that appellant was convicted of the robbery of the victim's wallet and of kidnapping for the purpose of a different robbery involving the compelled withdrawal of funds from an automated teller, which was unsuccessful. This is not, therefore, a case of punishing appellant for kidnapping for the purpose of robbery and for committing "that very robbery." (*People* v. *Beamon, supra,* 8 Cal.3d at p. 639.) Nor is this a case of multiple punishment for taking several items during the course of a robbery. (See *People* v. *Bauer* (1969) 1 Cal.3d 368, 377 [82 Cal.Rptr. 357, 461 P.2d 637, 37 A.L.R.3d 1398].) What began as an ordinary robbery turned into something new and qualitatively very different. No longer satisfied with simply taking the contents of the victim's wallet, appellant decided to forcibly compel the victim to drive

numerous city blocks to a bank where, only with the victim's compelled assistance, could appellant achieve a greater reward. The trial court could reasonably treat this as a new and independent criminal objective, not merely incidental to the original objective and not a continuation of an indivisible course of conduct. In the unusual circumstances of this case, appellant could be punished both for the robbery he committed and the kidnapping for the purpose of a distinctly different type of robbery.

### REASONS FOR SENTENCE CHOICES

On the two concurrent sentences for robbery and receiving stolen property, the court imposed upper terms. The only statement of reasons given by the court was the "aggravation listed in the probation report, which are numerous." Appellant correctly points out that the court is required to state its reasons on the record and should not simply incorporate by reference the probation officer's report. (*People* v. *Turner* (1978) 87 Cal.App.3d 244, 246-247 [150 Cal.Rptr. 807].) However, in this case the error was harmless and it would be idle to remand to the trial court for a new statement of reasons, as it is not reasonably probable that a result more favorable to appellant would occur. (*People* v. *Blessing* (1979) 94 Cal.App.3d 835, 838-839 [155 Cal.Rptr. 780].) After a four-page summary of appellant's *nine* prior felony convictions, the probation officer's report aptly described appellant as a career criminal. The report listed eight factors in aggravation and none in mitigation, and recommended maximum sentencing for the protection of the community and for punishment.

The judgment is affirmed.

Feinerman, P. J., and Hastings, J., concurred.