[No. D012850. Fourth Dist., Div. One. June 10, 1992.†]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD ALLEN SMITH, Defendant and Appellant.

†Review granted September 17, 1992. Review dismissed and opinion ordered published
November 10, 1993.

## COUNSEL

Dennis A. Fischer and Alan S. Yockelson, under appointments by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Harley D. Mayfield and Robert M. Foster, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WIENER, Acting P. J.**—Defendant Richard Allen Smith appeals a judgment of conviction after a jury found him guilty of first degree (residential)

robbery (Pen. Code, §§ 211 and 212.5, subd. (a)),[1] kidnapping for robbery (§ 209, subd. (b)), assault with a deadly weapon (§ 245, subd. (a)(1)) and auto theft (Veh. Code, § 10851, subd. (a)). Various allegations relating to weapons use (§§ 1192.7, subd. (c)(23) and 12022, subd. (d)) and prior convictions/prison terms (§§ 667.5, subd. (b) and 1203, subd. (e)(4)) were also found to be true. Smith was sentenced to life imprisonment on the kidnapping count plus consecutive determinate terms on the robbery and auto theft counts and the section 667.5 enhancement. Sentence on the assault with a deadly weapon count was stayed pursuant to section 654.

Smith's primary argument is that he was improperly convicted of kidnapping for the purpose of robbery. Following California Supreme Court precedent on the issue, we disagree. As to his second argument, however, we conclude section 654 prohibits separate punishment on the auto theft count in addition to the robbery and kidnapping-for-robbery charges. Accordingly, we modify the judgment to stay execution of sentence on that count. As modified, we affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Shortly after arriving in San Diego from Phoenix, Smith met the eventual victim, 59 year-old Phillip Bennett, in Balboa Park. Smith and Elbert Gooch had retrieved a wrist watch which had been stolen from Bennett's friend. Later Smith and Bennett developed an intimate homosexual relationship, seeing each other on four or five occasions over the next month. At one point Bennett gave Smith $100 and bought him some clothes to get him started in San Diego. Bennett also loaned Smith additional funds. Toward the end of the month, Bennett told Smith he would not give him any more money.

Shortly thereafter, Smith and Gooch visited Bennett at his apartment. According to Smith, they discussed Smith's plans to return to Arizona. After talking together for 10-15 minutes, Smith suddenly hit Bennett in the face with his fist. Smith then pinned Bennett to the ground and demanded money. Bennett mentioned a location in the apartment where he thought there was money. When Gooch reported he could not find any money there, Smith became angry, punched Bennett in the ribs and threatened to kill him. Bennett then revealed another location upstairs where he kept money. Gooch retrieved several hundred dollars. Unsatisfied, Smith demanded more money.[2] Bennett told him he might be able to get some at the bank.

After obtaining a kitchen knife which he used to threaten Bennett, Smith took the sash from Bennett's bathrobe, tied it around Bennett's neck, and led

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

[2] It is unclear whether Smith knew that Gooch had taken money from the upstairs bedroom. Smith testified that Gooch told him he had found no money.

him from the apartment. Gooch followed carrying two videocassette recorders and a stereo receiver. Outside they were confronted by James Kemmesh, a neighbor of Bennett's who had come to check on him. Bennett told Kemmesh not to do anything because "they will kill me." Smith warned Kemmesh that he had a gun.

Bennett gave Smith his car keys. After forcing Bennett into the backseat, Smith drove to a bank several blocks away where there was an automatic teller machine (ATM). Bennett gave Smith his access card and personal identification number, allowing Smith to withdraw $200 from Bennett's account. Smith and Gooch then released Bennett. Bennett walked home. Smith and Gooch drove back to Arizona.

## DISCUSSION

*Sufficiency of the Evidence to Support the Kidnapping for Robbery Conviction*

Smith's principal contention is that the evidence concerning the movement of Bennett to the ATM is legally insufficient to establish kidnapping for the purpose of robbery.

It is unnecessary for our purposes to recount in detail the history of judicial interpretation, and legislative reaction to judicial interpretation, of the aggravated kidnapping statute. (See *People* v. *Daniels* (1988) 202 Cal.App.3d 671 [248 Cal.Rptr. 753].) Suffice it to say that in 1969, the Supreme Court in another case named *Daniels* (*People* v. *Daniels* (1969) 71 Cal.2d 1119 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677]) sought to provide a basis for distinguishing simple robberies from kidnappings for the purpose of robbery. The court explained that section 209 was intended "to exclude from its reach not only 'standstill' robberies [citation] but also those in which the movements of the victim are merely incidental to the commission of the robbery and do not substantially increase the risk of harm over and above that necessarily present in the crime of robbery itself." (71 Cal.2d at p. 1139.) While it is clear that both prongs of the *Daniels* test must be satisfied to sustain an aggravated kidnapping conviction (see *In re Earley* (1975) 14 Cal.3d 122, 128 [120 Cal.Rptr. 881, 534 P.2d 721]), later cases have vacillated in explaining what is necessary to satisfy the required elements. (Compare *People* v. *Timmons* (1971) 4 Cal.3d 411, 414-416 [93 Cal.Rptr. 736, 482 P.2d 648] with *People* v. *Thornton* (1974) 11 Cal.3d 738, 767-768 [114 Cal.Rptr. 467, 523 P.2d 267] and *People* v. *Stephenson* (1974) 10 Cal.3d 652, 657-658, 660-661 [111 Cal.Rptr. 556, 517 P. 2d 820].) In addition, *People* v. *Stanworth* (1974) 11 Cal.3d 588 [114 Cal.Rptr. 250, 522

P.2d 1058] indicates the *Daniels* factors are inapplicable to define the degree of movement necessary to constitute a simple kidnapping, even where it is committed in conjunction with other crimes. (*Id.* at pp. 600-601.) Instead, all that is required is that the movement be "substantial." (*Id.* at p. 601.)

Some have suggested the Supreme Court's interpretive path in section 209 cases has effectively eliminated any substantive content in the *Daniels* factors, substituting instead a substantial distance requirement.[3] (See *People* v. *Daniels, supra,* 202 Cal.App.3d at pp. 679-682.) If this is true, the court's attempt in *People* v. *Stanworth, supra,* to distinguish the analytic ground rules for simple and aggravated kidnappings would appear to be of little significance. An aggravated kidnapping may be merely a simple kidnapping committed in conjunction with (or to facilitate) a robbery.[4] Even if the two *Daniels* factors retain independent analytic vitality, it would seem clear that asportation for a "substantial distance" is an additional necessary requirement, i.e., an aggravated kidnapping requires at a minimum that the defendant's acts constitute a simple kidnapping.

With respect to Smith's crime in this case, we find ourselves forced to the same conclusion as the Court of Appeal reached in the second *Daniels* case. (See *People* v. *Daniels, supra,* 202 Cal.App.3d at pp. 683-684.) Whatever may be the need for guidance in this area, the California Supreme Court has made clear that movement of the victim for a substantial distance to facilitate the robbery will not be viewed as incidental. (See, e.g., *People* v. *Thornton, supra,* 11 Cal.3d at p. 768; *In re Earley, supra,* 14 Cal.3d at p. 130.) Here, Smith forced Bennett to accompany him on a two-to-three block drive to the ATM. (See *People* v. *Thornton, supra,* 11 Cal.3d at p. 747 [movement of four blocks]; *People* v. *Daniels, supra,* 202 Cal.App.3d at p. 683 [three to four blocks]; see also *In re Earley, supra,* 14 Cal.3d at p. 130 [suggesting that one-block movement may be sufficient].) Moreover, Bennett believed Smith possessed a gun and knife and feared he would be killed. Consistent with this precedent which considers the victim's potential response as well as the actual danger (see *People* v. *Lara* (1974) 12 Cal.3d 903, 908 [117 Cal.Rptr. 549, 528 P.2d 365] and fns. 3 and 4; *In re Earley, supra,* 14 Cal.3d

---

[3]Certainly the examples cited in *Daniels* would appear inconsistent with later decisions. (Compare *Daniels, supra,* 71 Cal.2d at pp. 1134-1137 with, e.g., *In re Earley, supra,* 14 Cal.3d at p. 126 and *People* v. *Thornton, supra,* 11 Cal.3d at pp. 767-768.)

[4]In the absence of *People* v. *Stanworth* one could argue the Legislature intended that the only distinction between simple and aggravated kidnapping is the purpose for which the crime is committed. Certainly there is nothing in the language of the statute to indicate that something different was required in terms of the nature of the movement to constitute aggravated kidnapping. In this regard, *People* v. *Daniels, supra,* 71 Cal.2d 1119 could be viewed not so much as an interpretation of section 209 but rather as an analysis of when movement of a victim in conjunction with the commission of another crime involving force escalates to a kidnapping.

at p. 132), we cannot say that the movement did not increase the risk of harm to Bennett. (See *People* v. *Daniels*, *supra*, 202 Cal.App.3d at pp. 683-684.)

We accordingly conclude Smith was properly convicted of kidnapping for the purpose of robbery.[5]

*Double Punishment*

■ Smith also argues that the court's imposition of separate sentences on the robbery and auto theft counts is barred by section 654.

Section 654 prohibits multiple punishment not only for a single act which violates more than one statute but also where separate statutes are violated by a single course of conduct engaged in by the defendant pursuant to a single intent and objective. (*People* v. *Beamon* (1973) 8 Cal.3d 625, 637-638 [105 Cal.Rptr. 681, 504 P.2d 905].) This principle has been applied to preclude separate punishment for the crimes of robbery and kidnapping for the purpose of committing that same robbery. (*Id.* at pp. 639-640.)

The People respond that *Beamon* is inapplicable because the kidnapping of Bennett was for the purpose of committing a separate and distinct robbery. In effect, they argue Smith could be separately punished for the robbery which occurred at the house (money and electronic equipment) and the robbery which occurred at the ATM (money). For support they rely principally on *People* v. *Porter* (1987) 194 Cal.App.3d 34 [239 Cal.Rptr. 269].[6] In *Porter* as in this case, the defendant stole money from the victim, obtained the victim's ATM card, and then forced the victim to accompany him to a nearby ATM to obtain more money. The defendant was sentenced for both robbery and kidnapping for the purpose of robbery. The *Porter* court accepted the argument made by the People here, concluding that the evidence

---

[5]Implicit in our analysis of Smith's substantial evidence contention is our compelled rejection of his alternative argument, premised largely on Justice Mosk's dissent in *In re Earley*, *supra*, 14 Cal.3d at page 140, that his conviction and sentence on the aggravated kidnapping charge constitute cruel and unusual punishment on the facts of this case. We view the argument as having been implicitly rejected by the majority opinion in *Earley*—the last Supreme Court pronouncement on this subject—presumably based on the assumption that a kidnapping for the purpose of robbery creates greater risks for the victim than a kidnapping for some other purpose. (Cf. § 208, subd. (d), providing for a lesser punishment for kidnappings committed to facilitate certain sexual assaults.)

[6]The People also cite *People* v. *Lochmiller* (1986) 187 Cal.App.3d 151, 153 [232 Cal.Rptr. 20] and language in *People* v. *Levitt* (1984) 156 Cal.App.3d 500, 510-511 [203 Cal.Rptr. 276] for the proposition that the "vague catch-all" assertion of "getting money" is overly broad and does not qualify as a single intent for the purposes of section 654. *Lochmiller* and *Levitt* are not particularly helpful, however, in that they deal with robberies separated substantially in space and time and reflect as well an established exception to section 654 where multiple victims are involved. (See, e.g., *Lochmiller*, *supra*, 187 Cal.App.3d at p. 153.)

"support[ed] the trial court's implied finding that the two crimes for which appellant was sentenced involved multiple objectives, were not merely incidental to each other, and were not part of an indivisible course of conduct." (194 Cal.App.3d at p. 38.) Explaining this reasoning, the court stated, "A reasonable inference from the record is that appellant and his companion initially planned only to rob the victim of the contents of his wallet, but thereafter came up with a new idea: kidnapping the victim to his bank to compel him to withdraw money from his account by means of what they thought was an automated teller card." (*Ibid.*)

Smith argues that *Porter* was wrongly decided, relying in large part on the Supreme Court's decision in *People* v. *Bauer* (1969) 1 Cal.3d 368 [82 Cal.Rptr. 357, 461 P.2d 637, 37 A.L.R.3d 1398]. There, the defendant entered the victims' house, took numerous items of personal property which he loaded into one of the victims' cars, and then took the car to effect an escape. The defendant challenged the trial court's decision to punish him for both the robbery and auto theft. Interpreting section 654, the Supreme Court explained that "where a defendant robs his victim in one continuous transaction of several items of property, punishment for robbery on the basis of the taking of one of the items and other crimes on the basis of the taking of the other items is not permissible." (1 Cal.3d at p. 377.) Significantly, the Attorney General argued in *Bauer* that separate punishment was appropriate because the defendant formed the intent to steal the car only after the other items had been taken. The *Bauer* court rejected this contention in the following discussion: "The fact that one crime is technically complete before the other commenced does not permit multiple punishment where there is a course of conduct comprising an indivisible transaction. [Citations.] And the fact that one of the crimes may have been an afterthought does not permit multiple punishment where there is an indivisible transaction." (*Ibid.*; see also *People* v. *Brito* (1991) 232 Cal.App.3d 316, 326 [283 Cal.Rptr. 441].)

We acknowledge the tension between *Porter* and *Bauer*. *Bauer* can be read to suggest that *when* the defendant forms the intent to take the property is irrelevant to the question of multiple punishment as long as the force or fear which is the central element of robbery (see *People* v. *Ramos* (1982) 30 Cal.3d 553, 589 [180 Cal.Rptr. 266, 639 P.2d 908]) continues uninterrupted. *Porter*, in contrast, seems to suggest that the timing of the defendant's intent is critical.[7]

The fact remains, however, that the circumstances in *Porter* are virtually identical to those in this case. Moreover, *Porter* considered *Bauer* but found

---

[7]Under the *Porter* theory, a defendant who demanded the contents of the victim's wallet, was dissatisfied, and then took a watch would arguably be guilty of two robberies. Or if the defendant found no money in the victim's wallet and then took other property, he could presumably be found guilty of both a robbery and an attempted robbery.

it distinguishable, noting that "[t]his is [not] a case of multiple punishment for taking several items during the course of a robbery." (194 Cal.App.3d at p. 38.) During the five years since it was decided, the reasoning of *Porter* has not been questioned.

We have concluded it would be inappropriate for us to decide the correctness of *Porter*'s attempted distinction of *Bauer*. Were we to disagree with *Porter*, we would create a conflict only the Supreme Court could resolve. Instead, we choose to rely on *Porter* as the settled precedent on the issue, noting the arguments made by the defendant here and leaving it to the Supreme Court to grant review in this case if it believes *Porter* was incorrectly decided.

*Porter*, however, does not assist the People as to the question of separate punishment for the auto theft count. Indeed, the facts of this case are indistinguishable from *Bauer* in that regard. Accordingly, section 654 requires that the sentence on the auto theft count be stayed.

### DISPOSITION

The judgment is modified such that sentence on count five (auto theft) is stayed pending completion of the sentence on count one (robbery), count two (kidnapping for robbery) and the separate enhancement imposed pursuant to section 667.5, subdivision (b). As so modified, the judgment is affirmed.

Benke, J., and Nares, J., concurred.