Filed 2/22/21; See dissenting opinion

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>JOSE MARCOS BARRIOS,<br><br>      Defendant and Appellant. | B302847<br><br>(Los Angeles County<br>Super. Ct. No. KA116550) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Mike Camacho, Judge. Remanded to modify sentence.

Paul Couenhoven, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews and Rama R. Maline, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

Jose Marcos Barrios hijacked I. Hsiung and his car for a robbery. Barrios took the cash from Hsiung's wallet and ordered Hsiung to drive them both to ATMs for more cash. This nighttime affair lasted some two hours. It included freeway travel and a long interval of inaction while Barrios persisted in holding Hsiung. Barrios awaited the stroke of midnight in hopes it would bring Hsiung a new daily ATM withdrawal limit and so would allow Barrios to rob Hsiung of yet more cash. Police rescued Hsiung after he texted for help.

The jury convicted Barrios of several crimes. Pertinent now are two: *kidnapping for robbery* and *robbery*. Each conviction, with its gun enhancement, meant a separate sentence of 25 years to life plus 10 years. (Pen. Code, § 12022.53, subd. (b).) The court did not stay either sentence, but ordered them to be consecutive: 50 years to life plus 20 years. The whole sentence, including a five-year prior conviction enhancement (Pen. Code, § 667, subd. (a)(1)), was 75 years to life.

If many offenses were incident to one objective, Barrios may be punished for any of the offenses but not for more than one. (*People v. Goode* (2015) 243 Cal.App.4th 484, 492; Pen. Code, § 654.) Here, *robbery* was an incident to Barrios's *kidnapping for robbery*. Because the kidnapping had no objective but robbery, the robbery sentence and its enhancement must be stayed.

I

Hsiung was parked on the street at about 10:30 p.m. Out of the dark, Barrios approached on foot wearing sunglasses, a mask, and a hat. He tapped the car window with a gun and told Hsiung to open his car or lower the window. Hsiung lowered the window.

Barrios asked if Hsiung had money in the car. Hsiung said he had cash in his wallet and "I will just give you that." After getting this cash, Barrios told Hsiung he wanted to get in Hsiung's car to go to an ATM to withdraw money. Barrios got in back and made Hsiung drive to an ATM. Barrios, not Hsiung, raised the topic of ATMs.

The two drove to a Bank of the West. Hsiung told Barrios he could withdraw only his daily limit of $500. Barrios ordered Hsiung to make the withdrawal and to keep the car door open so Barrios could shoot if Hsiung ran. Hsiung got $500 and gave it to Barrios.

Barrios told Hsiung they would wait until after midnight, "so technically it's another day." Barrios wanted to see if Hsiung could withdraw more money after midnight. They parked a ways off and waited.

Astonishingly, robber Barrios took a nap. Hsiung texted friends for help. A text time stamp showed 11:50 p.m.

After midnight, Barrios awoke and they started to return to the ATM. On the way there were police. Barrios told Hsiung to drive to the freeway. After five minutes on the freeway, Barrios told Hsiung to exit and they drove to a Bank of America. Hsiung tried but could not withdraw money from the ATM there. At Barrios's command, Hsiung kept driving until a police roadblock ended the episode.

## II

Whether Barrios can be imprisoned for both *robbery* and for *kidnapping to commit robbery* calls for an interpretation of Penal Code section 654, which says an "act" punishable in different ways by different legal provisions shall be punished under the provision providing the longest potential term of imprisonment,

3

but in no case shall the "act" be punished under more than one provision.

We must interpret the statutory word "act." Was Barrios's venture one "act" or more than one "act?" Obviously Barrios performed many different physical actions over these two hours: he tapped with his gun, he issued commands, he napped, he awoke, and so on. Yet the question is legal and not physical: within the meaning of Penal Code section 654, was this course of conduct but a single "act?" This question of statutory interpretation is a question of law.

The facts in this case are undisputed because Barrios testified to an exculpatory version that the jury, to convict, had to reject. Barrios does not press his version on appeal. We are left with only Hsiung's version, which is uncontested.

When facts are undisputed, the application of Penal Code section 654 raises a question of law. It is purely a question of statutory interpretation. Our review is independent. (*People v. Corpening* (2016) 2 Cal.5th 307, 312.) This remains true whether the statutory "act" is or is not a course of conduct that violates more than one statute and thus poses the problem of whether the course of conduct comprises a divisible transaction that can be punished under more than one statute within the meaning of section 654. (*People v. Beamon* (1973) 8 Cal.3d 625, 637 (*Beamon*).)

The *Beamon* decision, for instance, grappled with facts similar to those here. We detail the similarity in the next paragraph. First we note *Beamon* used an independent standard of review: "We are compelled to the conclusion *as a matter of law* that on the record here both crimes were committed pursuant to a single intent and objective, i.e., to rob Ashcraft of the truck or

4

its contents." (*Beamon, supra*, 8 Cal.3d at p. 639 [italics added]; cf. *People v. Coleman* (1989) 48 Cal.3d 112, 162 & 163 [citing *Beamon*]; *Coleman*, at p. 128 ["Defendant [Coleman] testified. His account corroborated most of the prosecution testimony but differed in certain crucial respects."].)

We now detail how the facts of the *Beamon* case resemble this case.

Victim Ashcraft drove a liquor truck and got out for a delivery. When Ashcraft returned to the driver's seat, Beamon entered the passenger side with a gun. The two drove a distance and then fought. Ashcraft fled and called police, who later arrested Beamon. The episode lasted about 20 minutes and covered about 15 blocks. (*Beamon, supra*, 8 Cal.3. at pp. 630–631.) The jury convicted Beamon of robbery and kidnapping for robbery. The Supreme Court had "little difficulty" with the case: Beamon "was convicted of [kidnapping] for the purpose of robbery and for the commission of that very robbery. We are compelled to the conclusion as a matter of law that on the record here both crimes were committed pursuant to a single intent and objective, i.e., to rob Ashcraft of the truck or its contents." (*Id.* at p. 639.) Beamon "may therefore be punished for only one of such crimes. As punishment for second degree robbery is the lesser punishment for the two crimes, its execution must be stayed." (*Id.* at pp. 639–640.)

*Beamon* governs. It is not identical to this case, but the facts of this Supreme Court precedent are close. Under *Beamon*, Barrios's robbery sentence and his sentence for the associated enhancement must be stayed.

The prosecution cites *People v. Porter* (1987) 194 Cal.App.3d 34, which itself cited *Beamon*. (*Porter*, at p. 38.) The

Court of Appeal, however, made no effort to distinguish *Beamon*; *Porter* merely asserted every case must be decided on its own facts. (*Porter*, at p. 38 [application of Pen. Code, § 654 "to any particular case depends upon the circumstances of that case"].) This treatment of a factually similar Supreme Court precedent is baffling.

If you kidnap people to rob them, robbing them is the whole point. The project has no other goal. Breaking *robbery* apart from *kidnapping for robbery* is artificial and unconvincing, absent some event or occurrence that, midstream, marks a transition and redirects the perpetrator to embark on a new criminal objective.

This record reveals no epiphany for Barrios. He kept doing what he set out to do: commandeer Hsiung and his car for a robbery. Barrios sought to rob Hsiung of as much cash as he could. That intent is apparent from Barrios's command to Hsiung to go to the ATM to withdraw money. No factual development broke the chain of events and showed Barrios changed his plan or developed a new one. There was but one criminal "act."

**DISPOSITION**

We remand this case for the trial court to stay both the sentence for the robbery conviction on count 4 and for the enhancement for that count.  The trial court is to modify the abstract of judgment accordingly and to forward the corrected abstract to the Department of Corrections and Rehabilitation.


WILEY, J.


I Concur:


STRATTON, J.

**BIGELOW, P. J.**

I respectfully dissent.

In *People v. Porter* (1987) 194 Cal.App.3d 34 (*Porter*), the court held Penal Code section 654[1] allowed a defendant to be separately punished for robbery and kidnapping for robbery when he and another suspect robbed a victim at knifepoint in the victim's car, then, unsatisfied with the money they found, forced the victim to drive to an ATM machine to withdraw more money. In this case, defendant Barrios did the same thing—he demanded and received $50 from the victim at gunpoint while standing outside the victim's car, then got into the car and forced the victim to drive to an ATM to withdraw $500 more. Like the defendant in *Porter*, Barrios was separately punished for robbery and kidnapping for robbery.

Though these cases are basically identical, the majority disagrees with *Porter* and holds Barrios could not be punished for both felonies pursuant to section 654 based on *People v. Beamon* (1973) 8 Cal.3d 625 (*Beamon*). I do not find that case controlling here and, based on *Porter*, would affirm.

The majority makes two errors in its analysis that lead it to the wrong conclusion. First, it applies the wrong standard of review. Second, it fails to appreciate that the robbery here was completed before the kidnapping for a *second* robbery even began.

With this in mind, I turn to the facts. At 10:30 p.m. on October 20, 2017, victim I. Hsiung went to pick up his mother at her friend's house. He parked outside and sent her a text.

---

[1] All undesignated statutory citations refer to the Penal Code.

1

While he was waiting, Barrios knocked on the closed driver's side window. He was in disguise, wearing dark clothes, a mask, a beanie, sunglasses, and gloves. He had a gun.

Hsiung rolled down the window, and Barrios demanded money. Hsiung gave him the $50 cash he had in his wallet. Apparently unsatisfied with it, Barrios got into the back seat of Hsuing's car and told him to drive to an ATM to withdraw more money. Hsiung said he was waiting for his mother, and Barrios forced him to text her and tell her to get a ride from her friend. If Hsiung did not obey, Barrios threatened to kill everyone inside the house.

With Barrios in the back seat, Hsiung drove to a nearby bank and withdrew $500, his daily withdrawal limit. He gave it to Barrios. Barrios wanted more. Since it was almost midnight—and close to a new day with a new withdrawal limit— Barrios forced Hsiung to park on a nearby street and wait to make another withdrawal. He threatened to shoot Hsiung if he ran.

As they waited, Barrios fell asleep. Hsiung texted some friends he was being robbed and told them to call 911. They did.

Barrios woke up after midnight and forced Hsiung to drive to the ATM. When they spotted police, Barrios pressed the gun to the back of Hsiung's neck and told him to keep driving. They eventually stopped at another ATM and Hsiung tried unsuccessfully to withdraw more money. They kept driving until Barrios told Hsiung to get out of the car. Hsiung did, but Barrios commanded him to get back inside when someone called out to them. Hsiung continued driving slowly as police arrived. Barrios took off his mask, sunglasses, and gloves. Eventually Hsiung stopped when police cars blocked the road.

Barrios jumped out of the car and ran. He was caught and arrested. Officers found a loaded gun in a construction site where Barrios was seen discarding it as he fled. Police found gloves and $550 in Hsiung's car.

A jury convicted Barrios of five felonies: kidnapping to commit robbery (§ 209, subd. (b)(1)); possession of a firearm by a felon (§ 29800, subd. (a)(1)); unlawful possession of ammunition (§ 30305, subd. (a)(1)); robbery (§ 211); and assault with a firearm (§ 245, subd. (a)(2)). The jury found true firearm enhancements. (§§ 12022.5, subd. (a), 12022.53, subd. (b).) The court found true three prior convictions. (§ 667, subds. (a)(1), (b)–(j); § 667.5; § 1170.12.)

In its sentencing brief, the prosecution argued that Barrios should be sentenced consecutively for the robbery and kidnapping for robbery counts. It relied on *Porter* and contended Barrios committed two crimes: robbing Hsiung of the money in his wallet followed by kidnapping him at gunpoint to drive to rob him a second time at an ATM. The prosecution pointed out—accurately—that jury could not have convicted Barrios of robbery based on the conduct at the ATM because the jury was specifically instructed it could not find him guilty of robbery unless they found he took first the initial $50 *before* forcing Hsiung to drive to the ATM.

At the sentencing hearing, the trial court agreed with the prosecution and imposed consecutive sentencing. It noted "the jury made a specific finding that this robbery was separate and apart from the robbery that was the subject of the kidnap for purposes of count 1," and it found that the robbery "was completed first and before the kidnapping occurred."

Barrios was given a third-strike sentence of 75 years to life. It was composed of 25 years to life for the kidnapping for robbery count plus a 10-year firearm enhancement; a consecutive 25 years to life for the robbery count plus a 10-year firearm enhancement; and a consecutive five years pursuant to section 667, subdivision (a)(1).  The terms for the rest of the counts were stayed pursuant to section 654.  The consecutive terms for robbery and kidnapping for robbery are at issue here.

Section 654 states in relevant part:  "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest possible term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).)

The majority opinion's first error occurs when it identifies our standard of review as de novo.  The case it cites—*People v. Corpening* (2016) 2 Cal.5th 307 (*Corpening*)—addressed the application of section 654 to the *single act* of forcefully taking a vehicle that constituted both carjacking and robbery.  The question was whether section 654 barred separate punishment when "the same action completed the actus reus for [both] crimes."  (*People v. Corpening, supra,* at p. 309.)  The court explained the application of section 654 requires a two-step inquiry.  "We first consider if the different crimes were completed by a 'single physical act.'  [Citation.]  If so, the defendant may not be punished more than once for that act.  Only if we conclude that the case involves more than a single act—i.e., a course of conduct—do we then consider whether that course of conduct reflects a single ' "intent and objective" ' or multiple intents and objectives."  (*People v. Corpening, supra,* at p 311.)  The issue in

4

*Corpening* only implicated the first step, and because the facts *at that first step* were undisputed, "the application of section 654 raises a question of law we review de novo." (*Id.* at p. 312.)

To support its standard of review, the majority characterizes the issue as whether Barrios committed one act or multiple acts and then inexplicably claims that issue is a question of statutory interpretation. Nobody has raised those issues -- not at the trial court and not on appeal. In fact, the parties *agree* this is not a single-act case. They agree Barrios's actions amounted to a course of conduct: Barrios's initial act of taking Hsiung's money while standing outside Hsiung's car, then Barrios's act of getting into the car and forcing Hsiung to drive to the ATM. Even *Beamon*, which the majority treats as dispositive, involved a course of conduct, not a single act. (*Beamon, supra,* 8 Cal.3d at p. 639.) We are thus confronted *only* with the second step in the application of section 654: whether Barrios's course of conduct reflected multiple intents and objectives. That is not a question of the legal meaning of "act" in section 654. As I outline below, this is a purely factual question entrusted to the trial court in the first instance.

The majority also relies on *Beamon* to support a de novo standard of review. *Beamon* did not discuss the standard of review. True, it held as a matter of law that a defendant cannot be punished for kidnapping for robbery and committing that same robbery. That does not tell us much, if anything, about the correct standard of review for a trial court's punishment for robbery and kidnapping for a *second*, later robbery.

Finally, the majority says de novo review applies because the facts are undisputed. I agree the *facts* surrounding the crimes are undisputed, but the issue here is what was going on in

Barrios's head at the time of the crimes, which was disputed. We wouldn't be here if the parties agreed on Barrios's intent and objectives in committing the robbery and the kidnapping for a second robbery. The majority simply misunderstands what is contested.

The correct standard of review is substantial evidence. (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.) " ' "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all the offenses were incidental to one objective, the defendant may be punished for any one of such offenses but not more than one." ' [Citation.] [¶] '[T]he purpose of section 654 "is to insure that a defendant's punishment will be commensurate with his culpability." ' [Citation.] 'It is [the] defendant's intent and objective, not temporal proximity of his offenses, which determine whether the transaction is indivisible.' " (*People v. Capistrano* (2014) 59 Cal.4th 830, 885–886, overruled on another ground by *People v. Hardy* (2018) 5 Cal.5th 56, 104.)

Thus, " '[t]he defendant's intent and objective are factual questions for the trial court.' " (*People v. Coleman* (1989) 48 Cal.3d 112, 162; see *People v. Jackson* (2016) 1 Cal.5th 269, 354 ["Intent and objective are factual questions for the trial court, which must find evidence to support the existence of a separate intent and objective for each sentenced offense."].) Multiple punishments are permissible if there is some " 'evidence to support [the] finding the defendant formed a separate intent and objective for each offense for which he was sentenced." ' " (*People v. Capistrano, supra,* 59 Cal.4th at p. 886.) The court's finding of separate intents, whether express or implied, must be viewed "

'in a light most favorable to the judgment, and [we must] presume in support of the court's conclusion the existence of every fact the trier of fact could reasonable deduce from the evidence. [Citation.]' " (*People v. Andra* (2007) 156 Cal.App.4th 638, 640–641.)

The second flaw in the majority's reasoning is finding section 654 barred separate punishment for robbery and kidnapping because it believes the robbery and kidnapping were crimes committed with only one intent and objective. The majority acknowledges the court in *Porter* rejected this argument in an indistinguishable set of facts, but contends *Porter* was wrong and conflicts with *Beamon*. I disagree.

In *Porter*, the defendant and an accomplice entered the victim's car and robbed him of money and his wallet at knifepoint. Finding only $7 or $8, the defendant forced the victim to drive to his bank to withdraw more money from an ATM. (*Porter, supra,* 194 Cal.App.3d at p. 36.) The defendant was convicted of robbery and kidnapping for robbery, and the trial court sentenced him to concurrent terms on the counts. (*Id.* at p. 37.) Recognizing that cases frequently bar punishment for both robbery and kidnapping for robbery pursuant to section 654, the Court of Appeal nonetheless upheld the dual sentence because "[t]he record . . . supports the trial court's implied finding that the two crimes for which appellant was sentenced involved multiple objectives, were not merely incidental to each other, and were not part of an indivisible course of conduct." (*Id.* at p. 38.)

The court explained: "A reasonable inference from the record is that appellant and his companion initially planned only to rob the victim of the contents of his wallet, but thereafter came up with a new idea: kidnapping the victim to his bank to compel

7

him to withdraw money from his account by means of what they thought was an automated teller card. . . . What began as an ordinary robbery turned into something new and qualitatively very different. No longer satisfied with simply taking the contents of the victim's wallet, appellant decided to forcibly compel the victim to drive numerous city blocks to a bank where, only with the victim's compelled assistance, could appellant achieve a greater reward. The trial court could reasonably treat this as a new and independent criminal objective, not merely incidental to the original objective and not a continuation of an indivisible course of conduct. In the unusual circumstances of this case, appellant could be punished both for the robbery he committed and the kidnapping for the purpose of a distinctly different type of robbery." (*Porter, supra,* 194 Cal.App.3d at pp. 38–39.)

Barrios's course of conduct is equally divisible. He knocked on Hsiung's closed car window and demanded money at gunpoint. When Hsiung gave him the $50 he had on him, Barrios thought it was not enough so he entered his car and forced Hsiung at gunpoint to drive to an ATM to withdraw more. This case is even stronger than *Porter* because the jury necessarily found the robbery and kidnapping divisible. The jury was instructed that it could only convict Barrios of robbery if jurors unanimously agreed "the People have proved specifically that the defendant committed that offense on October 20, 2017 when cash was taken at gunpoint from Mr. Ian Hsiung prior to the events that took place at the Bank of the West. Evidence that the defendant may have committed the alleged offense on another day or in another manner is not sufficient for you to find him guilty of the offense charged." On this record, the trial court could readily infer

8

Barrios's initial plan to rob Hsiung of the money he had on him turned into the very different plan to forcibly compel him to drive to an ATM to "achieve a greater reward," that is, commit a *second* robbery. (*Porter, supra,* 194 Cal.App.3d at p. 39.)

Porter didn't hide from or ignore *Beamon*, as the majority implies. *Porter* cited *Beamon* for the correct legal standards and explained "the application of section 654 to any particular case depends upon the circumstances of that case." (*Porter, supra,* 194 Cal.App.3d at p. 38.) The majority criticizes *Porter* for not further distinguishing *Beamon*. That view is understandable because the majority doesn't think the question is a factual one. To me, the differences between *Porter* and *Beamon* are obvious. In *Beamon*, the victim parked his work truck to make a delivery of liquor to a customer. The truck had approximately $2,500 worth of merchandise in it. When the victim returned to the truck, before he started the motor, defendant entered the truck's cab with a gun. The defendant told the victim to lie face down on the floor of the truck's cab and then took the keys and drove away. The two fought and the victim managed to get away. The truck had been driven approximately 20 blocks for some 20 minutes. The truck was later found abandoned.

The court held section 654 barred punishment for both "kidnaping for the purpose of robbery and for the commission of that very robbery," because "both crimes were committed pursuant to a single intent and objective, i.e, to rob [the victim] of the truck or its contents." (*Beamon, supra,* 8 Cal.3d at p. 639.)

Here, in contrast, Barrios demanded money from Hsiung at gunpoint while standing outside his car, received it, and then got into the car and forced Hsiung to drive to an ATM to withdraw more money. The jury expressly found the first robbery was

9

completed before Barrios began the kidnapping for a second, distinct robbery. Had Barrios simply walked away after taking the $50 Hsiung had in his wallet, he could have been charged with robbery but not with kidnapping for robbery. The asportation element would have been missing. (CALCRIM No. 1203.) In the words of *Beamon*, Barrios was not punished for "kidnaping for the purpose of robbery and for the commission of that very robbery." (*Beamon, supra,* 8 Cal.3d at p. 639.) We must defer to the trial court's finding that Barrios harbored separate intent and objectives when he committed these distinct acts constituting separate crimes.

Lest any question remain over *Porter*'s validity, the California Supreme Court expressly endorsed this conclusion in *People v. Latimer* (1993) 5 Cal.4th 1203 (*Latimer*). In *Latimer*, the Court considered whether to overrule *Neal v. State of California* (1960) 55 Cal.2d 11 (*Neal*), which "established the direction multiple-punishment analysis has taken in California" under section 654 ever since the case was decided. (*Latimer,* at p. 1205.) The *Latimer* court did not embrace *Neal*, but declined to overrule it largely for reasons of *stare decisis.* (*Latimer,* at p. 1206.)

In explaining how courts have limited the reach of *Neal*, the *Latimer* court cited a series of cases that had "found separate, although sometimes simultaneous, objectives under the facts." (*Latimer, supra,* 5 Cal.4th at p. 1212.) *Porter* was among the cases cited. The court explained in a parenthetical that *Porter* held "robbery and kidnapping the same victim for a later, additional, robbery had separate objectives." (*Latimer,* at p. 1212.) At the end of the *Latimer* opinion, the court wrote: "We also stress that nothing we say in this opinion in intended to

10

cast doubt on any of the later judicial limitations of the *Neal* rule. For example, we do not intend to question the validity of decisions finding consecutive, and therefore separate, intents, and those finding different, if simultaneous, intents. (See pt. II, A., *ante*, last three paragraphs.) Multiple punishment in those cases remains appropriate." (*Id.* at p. 1216.) The favorable citation of *Porter* is contained in those "last three paragraphs" of part II, A. of the *Latimer* opinion.

Porter remains good law, specifically endorsed by the California Supreme Court. I would uphold the trial court's sentencing decision in the face of this section 654 challenge because it is supported by substantial evidence. (*People v. Jones, supra,* 103 Cal.App.4th at p. 1143.) As in *Porter*, the evidence, along with the jury's finding that the robbery occurred *before* the kidnapping, amply supported a conclusion Barrios harbored two distinct intents: to rob Hsiung of the cash on him, and when the money he had was not enough, to then kidnap him to drive to another location to rob him of more money at the ATM. Barrios's separate punishment under section 654 was valid.

BIGELOW, P. J.

11