Filed 4/30/26  P. v. White CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G064912 |
| v. | (Super. Ct. No. 17WF2455) |
| VERNELL WHITE, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Andre Manssourian, Judge. Affirmed in part and reversed in part and remanded with directions.

Marcia R. Clark, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, Tami Falkenstein Hennick and Collette C. Cavalier, Deputy Attorneys General, for Plaintiff and Respondent.

\*         \*         \*

Penal Code Section 654 prohibits a trial court from imposing multiple punishments when a defendant commits multiple offenses during an indivisible course of conduct directed toward a single objective.[1] (*Neal v. State of California* (1960) 55 Cal.2d 11, 19 (*Neal*) ["If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one"].)

Defendant Vernell White and two accomplices carjacked a truck driver delivering medical supplies. The group held him at gunpoint and drove to a parking lot. The group then moved the driver to the back of the truck and continued to hold him at gunpoint while the group stole pharmaceutical drugs. After stealing the drugs, the group left the driver locked in the truck.

White was convicted of three crimes: kidnapping for the purpose of robbery, carjacking, and robbery. The trial court imposed concurrent sentences for each crime (25 years to life), plus 10 years for priors, for a total term of 35 years to life. In an earlier appeal we affirmed the judgment, but remanded the matter so the court could make clear its section 654 ruling. (*People v. White* (Apr. 3, 2024, G061707) [nonpub. opn.].)

On remand, the trial court imposed multiple punishments. We disagree with the court's section 654 ruling because the three crimes were all committed as part of an indivisible course of conduct with one objective: the theft of the drugs from the truck. (See *Neal, supra,* 55 Cal.2d at p. 19.)

Thus, we reverse White's sentence. On remand, the trial court is directed to resentence White by imposing a sentence for only one of the three crimes, and then the court is to stay the sentence on the other two crimes. In all other respects, the judgment is affirmed.

---

[1] Undesignated statutory references are to the Penal Code.

# I.

## FACTS AND PROCEDURAL HISTORY

On August 24, 2017, Miguel Z. was driving a box truck for Fox Transportation (Fox), a company that delivers medicines to pharmacies and hospitals. Miguel started his day at a pharmaceutical plant by loading boxes and plastic totes into the box truck. Fox drivers were not told what was in the containers. After the truck was loaded, Miguel drove to his first delivery location, and then to a hospital. Miguel arrived a little early at the hospital before it accepted deliveries, so Miguel parked the truck and waited.

While Miguel was on his phone, he noticed a man (later identified as White) approach the truck with a gun in his hand. Miguel recognized White because he had previously worked at Fox, but Miguel did not know his name. White ordered Miguel to open the truck and entered on the driver's side. Another man with a gun (later identified as Carl DeLoach) entered through the passenger door. Miguel was told to sit in the middle seat.

White drove the truck while DeLoach held the gun to Miguel's ribs. Video surveillance evidence later revealed the truck was being followed by a black car. White was in contact on his phone with the driver of the black car (later identified as Michael Robinson). Miguel heard Robinson telling White, "'Not here. There's cameras.'" White eventually parked the truck in the parking lot of a church.

Miguel was ordered to get out and unlock the back door of the truck. After doing so, Miguel was then ordered to go into the back of the truck and sit down. While Miguel was sitting in the back of the truck, he could feel a handgun on the back of his neck. Miguel saw the black car approach the truck and noticed Robinson out of the corner of his eye. White began rifling through plastic totes in the back of the truck and pulling out gray bags, while

3

handing them to Robinson. At one point, Robinson asked, "'Where's the juice at?'" or something like that. White responded, "'He doesn't know.'" Miguel understood "juice" to mean controlled medications.

After about five or 10 minutes, the three men finished removing items from the plastic totes in the back of the truck. Robinson asked White if Miguel's cell phone and wallet had been taken from him. The group then told Miguel not to turn around and then locked him inside. Miguel heard the black car leave. Miguel began banging on the truck and yelling for help. After about 15 minutes, police arrived.

*Court Proceedings*

The People filed an amended information charging White and his two accomplices with (1) kidnapping to commit robbery, (2) carjacking, and (3) second degree robbery. As to White, the information further alleged he had two strike priors and two prior serious felony convictions (nickel priors).

During the jury trial (a retrial), a Fox manager positively identified White as a former employee. Another Fox employee testified that the value of the stolen drugs was $7,710.29. Miguel testified that his phone, but not his wallet was taken at some point during the encounter. The jury found Robinson and White guilty of the charged crimes (DeLoach had earlier pleaded guilty). White admitted the prior conviction allegations. The trial court sentenced White to concurrent terms of 25 years to life for each of the three crimes, plus 10 years for the two nickel priors.

On direct appeal, this court reversed White's sentence. We directed the trial court to make clear its section 654 ruling. On remand, the court imposed concurrent sentences (the court's ruling will be covered in greater detail in the discussion section of this opinion).

4

## II.

## DISCUSSION

White argues that the trial court erred under section 654 because all three of White's convictions were "incidental to a singular plan to steal the pharmaceuticals in the truck." We agree.

In this part of the discussion, we will: (A) review relevant legal principles; (B) summarize the proceedings in the trial court on remand; and (C) apply the facts in this case to the relevant laws.

### A. Relevant Legal Principles

"An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).)

The purpose of section 654 is to ensure a defendant's *punishment* is commensurate with his or her culpability. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1211.) That is, a jury can *convict* a defendant of multiple crimes arising from a single act, but a court can only *punish* the defendant for one of those crimes. (*Ibid*.) If a court imposes concurrent sentences, then that sentence constitutes double punishment within the meaning of section 654. (*People v. Miller* (1977) 18 Cal.3d 873, 887.)

The Supreme Court has held that a course of criminal conduct is a single "act" for purposes of section 654 if all of the offenses committed during the course of conduct were incident to one objective. (*Neal*, *supra*, 55 Cal.2d at p. 19.) In *Neal*, defendant "threw gasoline into the bedroom of Mr. and Mrs. Theodore R. Raymond and ignited it." (*Id*. at p. 15.) The jury convicted defendant of two counts of attempted murder and one count of

5

arson. (*Ibid*.) "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor." (*Id*. at p. 19.) The Court reasoned that punishing defendant for both the arson and the attempted murder counts would violate "section 654, since the arson was merely incidental to the primary objective of killing Mr. and Mrs. Raymond." (*Id*. at p. 20.)

The Supreme Court later clarified: "It is defendant's intent and objective, not the temporal proximity of his offenses, which determine whether the transaction is indivisible. [Citations.] We have traditionally observed that if all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once." (*People v. Harrison* (1989) 48 Cal.3d 321, 335.)

"When a trial court sentences a defendant to separate terms without making an express finding the defendant entertained separate objectives, the trial court is deemed to have made an implied finding each offense had a separate objective." (*People v. Islas* (2012) 210 Cal.App.4th 116, 129.) We review for substantial evidence a trial court's implied finding that a defendant had separate intents and objectives for different offenses. (*People v. Dowdell* (2014) 227 Cal.App.4th 1388, 1414.)

"'"Substantial evidence" means that evidence which, when viewed in light of the entire record, is of solid probative value, maintains its credibility and inspires confidence that the ultimate fact it addresses has been justly determined.'" (*People v. Lehman* (2016) 247 Cal.App.4th 795, 804.)

*B. Proceedings on Remand*

At the hearing on remand, the trial court stated: "So the

6

clarification sought by the Court of Appeal was whether or not . . . Penal Code section 654 applied to the counts. At the time of sentencing, this court -- at the time that I sentenced him to 35 years to life in prison, I was somewhat unclear, perhaps vague, on the 654 point."

After hearing arguments from both sides, the trial court ruled that section "654 does not apply to these counts. These are all separate and distinct acts, in the court's mind. Though close in time, I would point out. [¶] . . . [¶] So at this time, I would formally make the ruling that 654 does not apply to counts 2 and 3 for the reasons I've stated on the record. And at this time Mr. White is to resume serving his state prison sentence."

*C. Application and Analysis*

Under section 654, a defendant cannot be punished for both a robbery, and a kidnapping for the purpose of that same robbery. (*People v. Beamon* (1973) 8 Cal.3d 625, 639 (*Beamon*).) In *Beamon*, a driver made a delivery of liquor to a customer. (*Id.* at p. 630.) When the driver "returned to the cab of the truck but before he started the motor defendant entered from the passenger side with a gun in his hand." The driver "was ordered to lie face down on the floor of the cab. Defendant took the keys from the victim's hand, started the motor and drove away." (*Ibid.*) After about 20 minutes of driving, and a brief struggle, the injured driver was able to escape. (*Id.* at pp. 630–631.) Police later arrested defendant. (*Id.* at p. 631.)

In *Beamon*, defendant was convicted of robbery and kidnapping for the purpose of robbery. [2] (*Beamon, supra,* 8 Cal.3d at p. 629.) On appeal,

---

[2] Carjacking did not become a crime in California until 1993. (See § 215, added by Stats.1993, ch. 611, § 6, eff. Oct. 1, 1993.)

defendant claimed "that sentencing him on both the robbery and kidnap[p]ing convictions constitutes multiple punishment in violation of section 654." (*Id.* at p. 636.) The Supreme Court agreed. (*Id.* at pp. 636–640.) Quoting its opinion in *Neal*, the Court noted: "'Whether a *course of criminal conduct* is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the *intent and objective of the actor*. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.'" (*Beamon*, at p. 637.)

"The initial inquiry in any section 654 application is to ascertain the defendant's objective and intent." (*Beamon, supra*, 8 Cal.3d at p. 639.) "We have little difficulty in applying the foregoing rules in the instant case. Defendant was convicted of kidnap[p]ing for the purpose of robbery and for the commission of that very robbery. We are compelled to the conclusion as a matter of law that on the record here both crimes were committed pursuant to a single intent and objective, i.e., to rob [the driver] of the truck or its contents. [Citations.] Pursuant to section 654, defendant may therefore be punished for only one of such crimes." (*Id.* at pp. 639–640, fn. omitted.)

Similar to *Beamon*, we also "have little difficulty" in finding that White's three convictions were committed pursuant to a single intent and objective: the theft of the pharmaceutical drugs. (*Beamon, supra*, 8 Cal.3d at pp. 639–640.) That is, if a group of criminals kidnaps and carjacks a truck driver in order to rob him of the merchandise in his truck, then the robbery of the merchandise is the whole point of the endeavor.

Here, under a plain analysis of the facts, the record reveals that White and his accomplices formed the intent a to commit a theft of pharmaceutical drugs from the delivery truck, and the crimes of robbery, carjacking, and kidnapping were the means of accomplishing the overriding

8

objective of committing the theft. (See *People v. Harrison supra*, 48 Cal.3d at p. 335 ["It is defendant's intent and objective, not the temporal proximity of his offenses, which determine whether the transaction is indivisible"].)

In its section 654 ruling, the trial court found that White committed "separate and distinct acts." And while that is correct—White, in fact, committed multiple crimes—the court bypassed the gravamen of the analysis. That is, the court did not analyze White's objective and intent. (See *Beamon*, *supra*, 8 Cal.3d at p. 639 ["The initial inquiry in any section 654 application is to ascertain the defendant's objective and intent"].)

In short, we find there is <u>not</u> substantial evidence to support the trial court's implied (unstated) finding that White formed (1) a separate intent and objective to commit a kidnapping for the purpose of robbery, and then (2) formed a separate intent and objective to commit a carjacking, and then (3) formed a separate intent and objective to commit a robbery of the pharmaceuticals. (See *People v. Green* (1996) 50 Cal.App.4th 1076, 1085 ["""there must be evidence to support a finding the defendant formed a separate intent and objective for each offense for which he was sentenced"""].)

Thus, we reverse White's concurrent sentences and remand for resentencing. On remand, the trial court is directed to impose a sentence for only one of the three convictions, and then stay the sentence on the other two crimes under section 654. (See, e.g., *People v. Alford* (2010) 180 Cal.App.4th 1463, 1469 ["to implement section 654, the trial court must impose sentence on all counts, but stay execution of sentence as necessary to prevent multiple punishment"].) In all other respects, the judgment is affirmed.

The Attorney General argues that *People v. Porter* (1987) 194 Cal.App.3d 34 (*Porter*), compels a different result. We disagree.

In *Porter*, a victim was parked on a busy street at night when two

9

people entered his car. (*Porter*, *supra*, 194 Cal.App.3d at p. 36.) Defendant entered the backseat and held a knife to the victim's throat, while his accomplice entered the car and sat in the front seat. Defendant directed the victim to drive to a nearby side street and to stop. After finding only $7 or $8 in the victim's wallet, defendant "insisted the victim must have more money than that." (*Ibid*.) The defendant and his accomplice then found a credit card in the victim's wallet, "which they believed was a bank automated teller card." (*Ibid*.) While continuing to hold the knife to the victim's throat, defendant then directed the victim to drive to a nearby bank, where he told the victim he was going to "'make me use my card to get him some money and I better hope that I had some money in the bank.'" (*Id*. at p. 36.) While at the bank, the victim was able to run away and call the police. (*Id*. at p. 37.)

At trial, defendant was found guilty of robbery, kidnapping for the purpose of robbery, and receiving stolen property. (*Porter*, *supra*, 194 Cal.App.3d at p. 36.) The trial court imposed a prison sentence for the kidnapping conviction (life), and concurrent sentences for the remaining convictions. (*Ibid*.) On appeal, defendant argued that the concurrent sentence for the robbery conviction violated section 654. (*Id*. at p. 37.) But the Court of Appeal disagreed: "The record in this case supports the trial court's implied finding that the two crimes for which appellant was sentenced involved *multiple objectives*, were not merely incidental to each other, and were not part of an indivisible course of conduct." (*Id*. at p. 38, italics added.)

The *Porter* court stated: "A reasonable inference from the record is that [defendant] and his companion initially planned only to rob the victim of the contents of his wallet, but thereafter came up with a new idea: kidnapping the victim to his bank to compel him to withdraw money from his account by means of what they thought was an automated teller card."

10

(*Porter, supra,* 194 Cal.App.3d at p. 38.) "What began as an ordinary robbery turned into something new and qualitatively very different." (*Id.* at p. 38.) The court held: "In the unusual circumstances of this case, [defendant] could be punished both for the robbery he committed and the kidnapping for the purpose of a distinctly different type of robbery." (*Id.* at p. 39.)

Here, unlike the multiple objectives in *Porter*, White's convictions (kidnapping for robbery, carjacking, and robbery) were all directed toward a singular objective: the theft of the drugs from the Fox delivery truck driven by the victim Miguel. (See *Neal, supra,* 55 Cal.2d at p. 19 ["If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one"].)

The Attorney General analogizes to *Porter* and claims that White and his two accomplices DeLoach and Robinson "expanded and escalated their crimes by also demanding Miguel's cell phone." But as accurately stated in White's reply brief, "that claim misstates the evidence."

Miguel never testified that anyone "demanded" his cell phone. The only evidence about the cell phone was that Robinson, the codefendant who followed in a separate car, asked his cohorts towards the end of the encounter whether Miguel's phone had been taken. Based on the record, a reasonable inference is that Robinson wanted to ensure that Miguel had no ability to contact the police once they left him alone in the truck. Indeed, the group could have also easily taken Miguel's wallet, but they did not do so.

Given Miguel's limited testimony, we simply do not know if the taking of the cell phone established all the elements of a robbery. (See § 211 ["Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear"].) Indeed, the prosecutor never

11

argued to the jury that the theft of Miguel's phone constituted any part of the charged robbery. This argument simply never came up during the trial.

In sum, the record establishes that the taking of the cell phone was just another act incidental to accomplishing the primary objective of stealing the pharmaceuticals. (See *People v. Harrison, supra,* 48 Cal.3d at p. 335 ["if all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once"].)

## III.

## DISPOSITION

We reverse White's sentence. On remand, we direct the trial court to resentence White by imposing a sentence for only one of the three convictions, and then staying the sentence on the other two convictions. We further direct the court to modify the abstract of judgment as needed and to send a certified copy to the Department of Corrections and Rehabilitation.

In all other respects, the judgment is affirmed.

MOORE, ACTING P. J.

WE CONCUR:

GOODING, J.

SCOTT, J.

12